[Cite as *State v. Taylor*, 2021-Ohio-758.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                         Court of Appeals No. L-20-1045

      Appellee                                   Trial Court No. CR0201402544

v.

 Michael Taylor                                    **DECISION AND JUDGMENT**

      Appellant                                  Decided:  March 12, 2021

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Michael Taylor, pro se.

* * * * *

**ZMUDA, P.J.**

## I.  Introduction

{¶ 1} In this pro se accelerated appeal, appellant, Michael Taylor, appeals the judgment of the Lucas County Court of Common Pleas, denying his application for a writ of mandamus.  Finding no error in the trial court's denial of appellant's application, we affirm.

## A.  Facts and Procedural Background

**{¶ 2}** On May 14, 2015, at the conclusion of a jury trial, appellant was found guilty of two counts of aggravated murder in violation of R.C. 2903.01(A) and (F), along with firearm specifications attached to each count.  Appellant was subsequently sentenced to two consecutive terms of life in prison without the possibility of parole, plus a mandatory term of three years in prison for each firearm specification.  Appellant timely appealed his convictions to this court, prompting the issuance of our September 16, 2016 decision affirming the judgment of the trial court in *State v. Taylor*, 6th Dist. Lucas No. L-15-1151, 2016-Ohio-5862.  In our decision in *Taylor*, we summarized the underlying facts of this case as follows:

> This case centers around the murders of three young men, two of whom were very closely associated with appellant.  Ultimately, appellant was charged with and convicted of the murders of those two men.

> The first murder was that of Darren Smith.  Darren, of the Overton family, was killed on April 24, 2010, in approximately the 1300 block of Grand Avenue, in Toledo, Ohio.  At that time, appellant lived at 1346 Grand with his sons, Michael Taylor III ("Michael III") and Montelle Taylor.  On May 7, 2010, Michael III, appellant's oldest son, was charged with Darren's murder, and on January 27, 2012, convicted of Darren's murder.  Thereafter, Michael III was sentenced to 18 years to life in prison.

2.

The second murder occurred during the early morning hours of June 10, 2011. Sergeant Daniel Raab, with the Toledo Police Department, responded to a dispatch concerning a man found lying in the street. Sergeant Raab discovered Montelle, appellant's youngest son, partly on the curb and partly on the street at West Bancroft and Auburn, in Toledo Ohio. Montelle was alive but had a serious gunshot wound to his body. According to his testimony, Sergeant Raab asked Montelle where he was shot and Montelle pointed down the street. Sergeant Raab then asked Montelle who shot him. While gasping for breath, Montelle responded, "Little Chris." Sergeant Raab asked Montelle a second time who the shooter was and Montelle stated, "Chris" and what sounded like "No-Veley." Sergeant Raab later learned Chris Snow-Veley was the name associated with Little Chris. Montelle died while being transported to nearby Toledo Hospital. Montelle was officially pronounced dead at 1:45 a.m.

This same Chris or Christian Snow–Veley was the victim of the third murder. Although appellant and Snow–Veley were unrelated, appellant treated Snow-Veley, who was a longtime friend to both Montelle and Michael III, as if he was another son.

According to the testimony of appellant's brother, Vincent Witcher, Snow-Veley was killed on May 27, 2013, by appellant and Elijah "Ratchet"

Dyer ("Ratchet"), during a Memorial Day party held at appellant's house at 263 East Hudson Street in Toledo, Ohio. After Snow-Veley was killed, his body was placed in a director's chair then put in the shower in the basement. Snow-Veley's body was then moved several times until it was left at an abandoned house on Streicher Street.

On July 31, 2013, two workers discovered the decomposed remains of a body in the stairway of an abandoned house on Streicher. A Lucas County Deputy Coroner testified she discovered eight bullets in the corpse found at the abandoned house. The eight bullets were from two different guns. An expert in the field of forensic odontology, after comparing dental records of the remains to Snow-Veley's dental records, concluded the remains were indeed Snow-Veley.

Prior to these murders and over the course of several years, appellant had taken out numerous life insurance policies on Montelle, Snow-Veley and Michael III.

On August 1, 2014, Christian Jackson, who was friends with Snow-Veley and closely associated with appellant, was indicted for the murder of Montelle. A year later, Jackson entered a guilty plea pursuant to *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), to one count of involuntary manslaughter and was sentenced to three years in prison.

4.

On September 26, 2014, appellant was indicted on two counts of aggravated murder, for the murders of Montelle and Snow-Veley.

*Id.* at ¶ 3-11.

{¶ 3} On October 22, 2019, three years after we issued our decision in *Taylor*, appellant, acting pro se, filed a "Request for Production of Documents Pursuant to Rule 6 Governing 28 U.S.C. 2255 Proceeding" with the trial court, in which he sought disclosure of his presentence investigation report so that he could use the information contained therein to support his arguments on appeal to this court in case No. L-19-1142. On November 5, 2019, the state filed its opposition to appellant's request, arguing that the request was moot in light of our dismissal of appellant's appeal in case No. L-19-1142 on July 29, 2019.

{¶ 4} While his request for production of documents remained pending, on January 2, 2020, appellant filed an application for a writ of mandamus in the trial court, seeking an order from the trial court directing one of the trial court's judges to mail him a copy of his presentence investigation report. Four days later, the state filed its opposition to appellant's application, asserting that the trial court only had the statutory authority under R.C. 2731.01 to issue a writ of mandamus to a tribunal that was inferior to itself, and thus could not issue the writ to itself.

{¶ 5} On January 27, 2020, the trial court issued its decision on appellant's request for production of documents and application for a writ of mandamus. As to appellant's request for production of documents, the trial court noted that this court had already

5.

dismissed appellant's appeal, and thus dismissed appellant's request as moot. Regarding the application for a writ of mandamus, the trial court agreed with the state that it could not issue the requested writ to itself under R.C. 2731.01, and consequently denied appellant's application. Thereafter, appellant filed a timely notice of appeal challenging the trial court's denial of his request for production of documents as well as its denial of his application for a writ of mandamus.

{¶ 6} On March 13, 2020, we sua sponte dismissed appellant's appeal of the trial court's order denying his request for production of documents after we concluded that such order was not final and appealable. This appeal then proceeded as to the trial court's denial of appellant's application for a writ of mandamus and, on March 26, 2020, the matter was placed on our accelerated calendar.

### B. Assignments of Error

{¶ 7} On appeal, appellant assigns the following errors for our review:

I. The Common Pleas Court Unconstitutionally Denied Taylor's Right to Retrieve a copy of his Presentence Investigation Report and he is Entitled to Relief

II. Taylor was Denied a Fundamentally Fair Trial and Due Process of Law by Improper Tactics Employed by the Prosecutor to Obtain "Impeachment"

III. It is unconstitutional for a state rule to preclude appellant as a pro se counsel the access to sentencing evidence that was relied upon by the trial court

{¶ 8} As each of appellant's assignments of error challenge the trial court's denial of his application for a writ of mandamus, they are interrelated and we will address them together.

## II. Analysis

{¶ 9} In his assignments of error, appellant argues that the trial court erred in denying his application for a writ of mandamus. We review the trial court's denial of appellant's application de novo. *State ex rel. Brown v. Nusbaum*, 152 Ohio St.3d 284, 2017-Ohio-9141, 95 N.E.3d 365, ¶ 10. Dismissal of appellant's application was appropriate only if it "appear[ed] beyond doubt from the complaint that [appellant could] prove no set of facts warranting relief, after all factual allegations of the complaint are presumed true and all reasonable inferences are made in [appellant's] favor." *State ex rel. Zander v. Judge of Summit Cty. Common Pleas Court*, 156 Ohio St.3d 466, 2019-Ohio-1704, 129 N.E.3d 401, ¶ 4.

{¶ 10} Under R.C. 2731.01 a writ of mandamus is defined as "a writ, issued in the name of the state *to an inferior tribunal*, a corporation, board, or person, commanding the performance of an act which the law specifically enjoins as a duty." (Emphasis added.) To be entitled to mandamus relief, the relator must establish, by clear and convincing evidence: (1) a clear legal right to the requested relief; (2) a clear legal duty on the part

7.

of the respondents to provide it; and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Love v. O'Donnell*, 150 Ohio St.3d 378, 2017-Ohio-5659, 81 N.E.3d 1250, ¶ 3.

{¶ 11} In its decision in *State ex rel. Russell v. Klatt*, 159 Ohio St.3d 357, 2020-Ohio-875, 150 N.E.3d 943, the Ohio Supreme Court affirmed the Tenth District's dismissal of a petition for a writ of mandamus, in which the relator, Russell, sought to compel the Tenth District and its judges to correct factual findings that were made in its decision on Russell's direct appeal. In affirming the Tenth District's dismissal of Russell's complaint, the Ohio Supreme Court noted that "Russell's complaint asks the Tenth District to issue a writ compelling itself to correct alleged inaccuracies in a 2004 decision. Mandamus will not lie to compel an entity to order itself to act." *Id.* at ¶ 8.

{¶ 12} Based upon the Ohio Supreme Court's decision in *Klatt*, it is clear that appellant was not entitled to the mandamus relief he sought in the trial court. Like the relator in *Klatt*, appellant requested a writ of mandamus from the same court that would be ordered to act under that writ. The trial court cannot be inferior to itself, and thus cannot issue a writ of mandamus directing itself to act under R.C. 2731.01. Therefore, the trial court properly denied appellant's application for a writ of mandamus.

{¶ 13} Additionally, appellant's application for a writ of mandamus fails because the trial court has no legal duty to provide appellant with a copy of his presentence investigation report. Indeed, the trial court may not provide a copy of the presentence

8.

investigation report to appellant, but must "retain the report or summary under seal." R.C. 2951.03(D)(3).

{¶ 14} In light of our conclusion that the trial court could not issue a writ of mandamus against itself, and because appellant has failed to demonstrate that the trial court has a clear legal duty to provide him with a copy of his presentence investigation report, appellant's argument that the trial court erred in denying his application for a writ of mandamus lacks merit, and his assignments of error are not well-taken.

### III. Conclusion

{¶ 15} In light of the foregoing, the judgment of the Lucas County Court of Common Pleas is affirmed. The costs of this appeal are assessed to appellant under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Christine E. Mayle, J.

Gene A. Zmuda, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.